**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**Western Division**

| | | |
|---|---|---|
| DANIEL DACOSTA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LASERSHIP, INC, d/b/a ONTRAC FINAL MILE,<br><br>Defendant. | ) | C.A. No.: 3:25-cv-30177-MGM |

# COLLECTIVE ACTION COMPLAINT

## I. INTRODUCTION

1. This is an action brought on behalf of current and former Massachusetts delivery drivers of Defendant LaserShip, Inc. d/b/a OnTrac Final Mile ("OnTrac" or "Defendant"), who are classified as independent contractors. OnTrac contracts with various companies, called Regional Service Providers ("RSPs"), who in turn contract with the drivers who physically deliver packages from OnTrac's distribution centers in Massachusetts, including in Franklin, Stoughton, Taunton, and Worcester to businesses and residential customers throughout Massachusetts and neighboring states. OnTrac controls, supervises, and benefits from the performance of these services. The drivers who perform these services, on whose behalf this collective action is brought, are improperly classified as independent contractors and thus are denied the protections federal wage and hour laws and other rights and benefits of employees.

2. The Plaintiff Daniel DaCosta brings this action on behalf of himself and on behalf of a collective of similarly situated persons who have worked as delivery drivers for OnTrac in Massachusetts during the past three years, who performed package delivery services for OnTrac

and have been misclassified as independent contractors by OnTrac when, in fact, they were employees. OnTrac has violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by failing to pay its drivers, including Plaintiff, time and one-half their regular rate for hours worked in excess of forty (40) hours per week.

## II. THE PARTIES

3. Plaintiff Daniel DaCosta ("DaCosta") is an adult resident of Brockton, Massachusetts. DaCosta provided delivery services for OnTrac between March 2024 and December 2024 in Franklin, Massachusetts. DaCosta is eligible to receive overtime pay under the FLSA since he has driven a vehicle weighing less than 10,001 pounds, but he has not received overtime pay for his hours worked beyond 40 per week.

4. The above-named Plaintiff brings this action on behalf of a collective of similarly situated individuals, namely, all other persons who personally provided delivery services for OnTrac in Massachusetts.

5. Defendant LaserShip, Inc. ("OnTrac" or "Defendant") is a corporation domiciled in Delaware and registered and conducting business in Massachusetts under the trade name "OnTrac Final Mile"

6. OnTrac has warehouses in Franklin, Stoughton, Taunton, and Worcester, Massachusetts.

7. OnTrac provides package and parcel delivery services to businesses and individuals.

8. OnTrac employs individuals, including Plaintiff, who are engaged in interstate commerce and/or in the production of goods for interstate commerce or are engaged in handling, receiving, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce. OnTrac is an employer covered by the FLSA.

## III. JURISDICTION AND VENUE

9. The Court has personal jurisdiction over Defendant OnTrac because its conduct in the Commonwealth of Massachusetts underlies all claims in this suit.

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States.

11. Venue in this Court is proper because the events set forth in this Complaint took place in Franklin, Massachusetts, in this judicial district.

## IV. COLLECTIVE DEFINITION

12. Plaintiff brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of himself and the following opt-in litigants:

> All former or current drivers who were classified as independent contractors while performing work for LaserShip, Inc., d/b/a OnTrac Final Mile in the Commonwealth of Massachusetts from July 2022 to the present (the "FLSA Collective").

13. Plaintiff reserves the right to redefine the Collective prior to filing a motion for notice to similarly situated employees pursuant to 29 U.S.C. § 216(b), and thereafter, as necessary.

## V. FACTS

14. OnTrac provides regional same-day delivery and overnight package delivery services within Massachusetts.

15. OnTrac contracts with intermediary regional service providers ("RSPs"), who provide regional same-day and overnight delivery services for OnTrac's customers within Massachusetts.

16. OnTrac enlists the intermediary RSPs to hire delivery drivers, coordinate delivery services, and enforce OnTrac's rules for deliveries.

17. RSPs obtain an exclusive right, from OnTrac, to operate within a specific service area.

18. Service areas are established by OnTrac using zip codes.

19. The RSPs are responsible for delivering all of the packages to OnTrac's customers within the zip code that corresponds to the service area.

20. The RSPs lack their own physical offices and, instead, operate out of OnTrac's distribution centers in Franklin, Stoughton, Taunton, and Worcester, Massachusetts.

21. RSPs enter into agreements with drivers, like Plaintiff, to deliver the packages from the OnTrac distribution center or warehouse to OnTrac customers in the RSP's respective service area.

22. Although the agreements between drivers and the RSP state that the drivers are hired by the RSP as independent contractors, the economic reality of the arrangement is that the drivers are actually employees of OnTrac and the RSP.

23. Upon information and belief, OnTrac mandates that RSPs classify drivers as independent contractors, as opposed to employees.

24. The RSPs are used as an intermediary in the delivery process, but OnTrac controls and supervises the delivery process.

25. As alleged in more detail below, OnTrac exercises near-total control over the manner in which drivers perform package delivery services.

26. The RSPs, in turn, closely monitor delivery drivers and enforce the requirements set by OnTrac.

27. Because OnTrac completely controls the drivers' performance of their duties, the drivers have no opportunity to utilize any managerial skills, let alone to profit from those skills.

28. Drivers are typically forbidden by OnTrac from hiring any other drivers to assist with the completion of their deliveries.

29. To work for OnTrac, drivers need not have any special skills.

30. The delivery of packages, the only service provided by the drivers, is the sole and central purpose of OnTrac's business, and OnTrac cannot make deliveries without the drivers.

31. As a result, the economic realities of the drivers' relationships with OnTrac and the RSPs make clear that the drivers are jointly OnTrac's and the RSPs' employees, not independent contractors.

32. Drivers are compensated on a per-package basis, meaning they receive a flat rate for every package they deliver.

33. This compensation structure is set by OnTrac, and Plaintiff and other delivery drivers have no opportunity to negotiate their pay rate.

34. Drivers only receive payment for a delivery if OnTrac deems that the delivery has been completed.

35. OnTrac has the power to terminate any driver for any reason by instructing the RSPs to end its relationship with a driver.

36. Additionally, OnTrac can, for any reason, prevent RSPs from hiring a driver in the first place.

37. OnTrac forbids drivers from working simultaneously for one RSP and another OnTrac RSP or for another delivery company.

38. Additionally, OnTrac forbids drivers from subcontracting with other additional drivers to deliver packages for them or assist in the delivery process.

39. OnTrac and RSPs enforce this policy by terminating or suspending or threatening

to terminate or suspend drivers who attempt to subcontract with additional drivers to share or cover their routes.

40. Upon information and belief, OnTrac requires that drivers are responsible for covering their routes on all days for which the route is served, six or seven days per week.

41. This requirement that drivers cover their routes at all times, combined with the prohibition on drivers hiring other drivers to share or cover their routes, means that drivers frequently work up to and over 12 hours a day, six or seven days in a week and, in reality, have no time to engage in other work.

42. OnTrac requires drivers to wear an OnTrac logo vest while in the warehouse.

43. Managers for OnTrac and the RSPs instruct drivers to wear the uniform described above, inspect drivers' appearance before they leave the warehouse for the day, and send them home if they are not wearing their uniforms.

44. OnTrac specifies the type of vehicle that the drivers are permitted to use. Drivers cannot use any other type of vehicle to deliver packages.

45. OnTrac has the discretion to terminate or suspend and, on information and belief, has terminated and suspended drivers for using an unapproved vehicle to deliver packages.

46. Drivers who provide their own vehicles must pay for gas, maintenance, and all other expenses necessary to operate the vehicles.

47. Drivers use vehicles such as cars and vans, which weigh less than 10,000 lbs., to make deliveries.

48. All drivers must have a special scanner app, required and managed by OnTrac, in order to perform deliveries for OnTrac.

49. OnTrac, through the RSPs, deducts a scanner fee of approximately $ 40.00 per

week from each driver's paycheck.

50. OnTrac controls when and how drivers deliver packages to customers.

51. Each day, drivers must arrive at the OnTrac distribution center.

52. Upon arriving at the facility, drivers wait for OnTrac to deliver the packages to the facility, then use their OnTrac apps to sort the deliveries and load them into their trucks.

53. These daily routes themselves are built and described by OnTrac's scanner app, not the RSP.

54. The app provides the drivers with their GPS directions and permits location tracking of the drivers.

55. Each route includes mandatory time windows, set by OnTrac, during which drivers are required to deliver specific packages, thereby requiring that the drivers arrive at the OnTrac facility in time to meet OnTrac's assigned delivery schedule and continue working until all deliveries are completed within the mandated time window.

56. Drivers do not have any control over which route they are assigned or the time windows during which they must make their deliveries.

57. After they are assigned a route, the drivers are required by OnTrac to load their vehicles with the packages for delivery.

58. Drivers are required to sort packages at the warehouse and assemble all the packages for their route and load them onto their vehicle. This process takes up to two hours a day.

59. Once drivers finish loading their vehicles, they verify that each package indicated on their scanner-created manifest has been scanned into the van.

60. The delivery manifest sets forth each driver's name and OnTrac ID number, all

deliveries for which the driver is responsible that day, and the time frame within which each package must be delivered.

61. Drivers then leave the distribution center to deliver packages.

62. While in the field, OnTrac continues to exercise significant control over the drivers.

63. OnTrac provides delivery instructions to drivers via messages on their scanners.

64. These instructions include, but are not limited to, instructing drivers when an OnTrac customer wants the delivery window shifted to an earlier or later time, providing specific instructions regarding where to leave a package at a delivery location, and monitoring the drivers' delivery times.

65. OnTrac has the discretion to terminate or suspend and, on information and belief, has terminated and suspended drivers for failing to follow instructions provided by OnTrac for deliveries.

66. In addition, OnTrac adds and cancels deliveries from a driver's manifest after the driver has left the distribution center.

67. When deliveries are added to the manifest, the drivers have no choice but to accept and complete these additional deliveries, which require the driver to return to the distribution facility or some other location to pick up the package.

68. OnTrac has the discretion to terminate or suspend and, on information and belief, has terminated and suspended drivers for failing to deliver packages added to the drivers' manifest after departing the distribution facility to begin their deliveries.

69. When deliveries are cancelled, either by OnTrac or the customer, the drivers do not receive any compensation for the packages they are transporting.

70. OnTrac's app also instructs drivers to pick up packages for delivery from customers within the drivers' delivery areas, where applicable.

71. OnTrac has the discretion to terminate or suspend and, on information and belief, have terminated and suspended drivers for failing to pick up packages as instructed.

72. While drivers are out delivering packages, OnTrac dispatchers track the drivers' locations using the GPS in the OnTrac scanners.

73. OnTrac dispatchers contact drivers through the scanner app to complain if the drivers appear to be departing from the prescribed route for delivering the packages.

74. OnTrac has the discretion to terminate or suspend and, on information and belief, has terminated and suspended drivers for departing from the prescribed route for delivering packages.

75. Accordingly, drivers are unable to choose the route to take to deliver their assigned packages.

76. OnTrac has the discretion to terminate or suspend and, on information and belief, have terminated and suspended drivers for failing to deliver packages within the time window outlined in the delivery manifests prepared and provided by OnTrac to drivers.

77. OnTrac requires that all drivers "clear" their route before they are free to stop working for the day.

78. A route is not considered "cleared" unless (a) all packages on the drivers' manifest have been deemed delivered or undeliverable and, if applicable, (b) any undeliverable packages have been returned to the OnTrac distribution center and unloaded by the driver and (c) any packages picked up during the day have been delivered to the OnTrac distribution center or warehouse and unloaded by the driver.

79. OnTrac determines whether the drivers' route has been cleared.

80. If OnTrac determines that the route has not been cleared, OnTrac requires drivers to remedy whatever issue is preventing the route from being cleared.

81. OnTrac has the discretion to terminate or suspend and, on information and belief, has terminated and suspended drivers for failing to clear their routes or failing to remedy issues that have prevented the route from being cleared.

82. Upon information and belief, OnTrac frequently unilaterally determines that a driver, for various reasons, including, but not limited to, failing to meet a delivery window or failing to comply with delivery instructions, will not be compensated for the delivery of a package to an address, even though the driver physically delivered the package to the address.

83. When this occurs, OnTrac, through the RSPs, deducts the compensation for the delivery from the driver's paycheck.

84. Though the length of each driver's day can vary, drivers typically work more than 8 hours per day from the time they arrive at the OnTrac distribution center until OnTrac confirms their route is clear.

85. Upon information and belief, drivers often work 12 or more hours from the time they arrive at the OnTrac distribution center until OnTrac confirms their route is clear.

86. Drivers, including Plaintiff, typically work more than 40 hours per week while providing services for OnTrac and their RSPs.

87. However, drivers are never provided with time and one-half their regular rate of pay for hours worked greater than 40 hours in a work week.

88. For example, Plaintiff DaCosta frequently worked 10-hour days, 6 or 7 days a week, totaling around 60 to 70 hours weekly.

89. OnTrac never paid Plaintiff DaCosta any wages, including overtime wages, exceeding $ 1.70 per package delivered.

90. Moreover, OnTrac, by misclassifying drivers as independent contractors, forces all drivers to bear all of the costs of performing delivery services, including, but not limited to, gasoline, tolls, vehicle maintenance (for those who provide their own vehicles), and insurance

91. OnTrac deducted around $ 40.00 each week as a scanner fee for Plaintiff DaCosta to use the mandatory scanner app.

92. Plaintiff DaCosta paid for his own gas, car maintenance, and tolls amounting to an average of $200.00 a week in business-related costs.

93. OnTrac did not pay Plaintiff DaCosta a wage amounting to or exceeding time and one-half his regular rate for all hours worked for the 20 to 30 hours he worked weekly that exceeded 40 hours.

94. At all relevant times, OnTrac is Plaintiff's employer under the FLSA.

## VI. COLLECTIVE ACTION ALLEGATIONS

95. Plaintiff brings this case as a collective action under 29 U.S.C § 216(b) on behalf of any drivers who delivered packages for OnTrac within the last three years who may choose to "opt in" to this case.

96. Plaintiff is similarly situated to all other drivers who delivered packages for OnTrac, and there is a group of similarly situated employees who were subject to OnTrac's common policies and who are entitled to notice of this action under 29 U.S.C § 216(b).

## COUNT I
### FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *ET SEQ.* – OVERTIME
### (On Behalf of Plaintiff and the FLSA Collective)

97. Plaintiff realleges and incorporates by reference all allegations in all paragraphs as if fully set forth herein.

98. The FLSA, 29 U.S.C. § 207(a)(2) provides in relevant part:

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

99. Plaintiff and Collective Action Members are entitled to be paid one and one-half times their regular rate of pay for all hours worked in excess of forty hours in a regular work week.

100. OnTrac's violations of the FLSA were willful and accordingly, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

101. Notice should be sent to all Collective Action Members, as defined above, pursuant to 29 U.S.C. § 216(b).

102. OnTrac has intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA.

103. Plaintiff and Collective Action Members have been harmed and suffered damages by being denied overtime pay in accordance with the FLSA, plus incurred costs and reasonable attorneys' fees.

104. As a result of OnTrac's unlawful and willful acts and violations of the FLSA, Plaintiff and Collective Action Members have been damaged and pursuant to 29 U.S.C. § 216(b) are entitled to recovery of overtime wages, liquidated damages in an amount equal to the wages they are owed as unpaid overtime, prejudgment interest, attorneys' fees, costs and other compensation, declaratory and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of

himself and the Classes and against Defendant as follows:

a. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. §216(b);

b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective Members;

c. Awarding Plaintiff and members of the Collective declaratory and/or injunctive relief as permitted by law or equity;

d. Awarding Plaintiff and members of the Collective their compensatory damages, service awards, attorneys' fees, and litigation expenses as provided by law;

e. Awarding Plaintiff and members of the Collective their pre-judgment, post-judgment, and moratory interest as provided by law;

f. Awarding Plaintiff and members of the Collective liquidated damages and/or statutory penalties as provided by law; and

1. Awarding Plaintiff and members of the Collective such other and further relief as the Court deems just and proper.

Dated: October 16, 2025

RESPECTFULLY SUBMITTED,

DANIEL DACOSTA, individually
and on behalf of all others similarly
situated,

Plaintiff,

/s/ *Harold L. Lichten*

Harold L. Lichten
Olena Savytska
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
osavytska@llrlaw.com